## REBUTTAL EXPERT REPORT OF RON AMASS

I have reviewed the Report of Francis A. Stanisz dated September 29, 2017 and provide the following in rebuttal.

### Introduction

The scope of my rebuttal is limited. I have not endeavored to review all of the documents Mr. Stanisz cited on pages 2 and 3 of his report. Thus, I am not in a position to comment upon the factual basis of his criticisms of the site grading and the construction of the house. Even assuming his factual criticisms are true, however, I disagree with certain of his stated opinions, as set forth herein.

### Rebuttal Opinions

1. Mr. Stanisz's fundamental opinion is that "the condition of the house, at the time of purchase by Butterworth and Smith should be considered normal and expected for this 50-year old house." Stanisz Report at p.20.

I strongly disagree. As a contractor with more than 30 years of experience in residential construction and with almost a decade of experience as a home inspector, it never should "be considered normal and expected" for any house to have the level of water intrusion that this house had at the time Prima Partners purchased it. Water is one of the most destructive forces on a house, and regardless of the age of a house water intrusion should be stopped. Most prudent people react immediately when water is seen entering a home. From the repairs made around the house it is apparent that the owners in this case made several attempts to stop the water, but all were band aids and water continued to enter the house seasonally.

1

EXHIBIT Q

2. Mr. Stanisz further opines that "[t]he vast majority of people have no idea that a problem exists until wall/ceiling/exterior wall finishes are removed to expose the guts of the structure." Stanisz Report at p.14.

Regarding this opinion, I agree that it is not reasonable to expect that Mr. Butterworth or Dr. Smith reasonably could have discovered any of these issues during the limited walkthroughs they were afforded prior to Closing. I also agree that it is not reasonable to expect that a home inspector, like me, could have discovered these latent issues given a one-time access to the house for a standard home inspection. Indeed, this is why the question of whether there are "Moisture and/or water problems" is featured prominently in the first section of the required Colorado Seller's Property Disclosure. This is precisely the kind of latent problem that a buyer and his/her inspector cannot readily determine before closing.

I disagree, however, with the conclusion that people such as the Waterhouses would have had no idea there were water intrusion problems with the house. To the contrary, given the extent of water intrusion problems Mr. Stanitz describes in his report, I would expect that the Waterhouses, who had owned the house for nearly 20 years, would have had knowledge over that period of time that water intrusion problems existed. And, in fact, it is my understanding that the record shows, and that the Waterhouses have admitted, that they were aware of a number of instances of water intrusion during the time they owned the house and that they attempted to take steps to address the problems.

It is also my understanding that an individual named Steven Schwartzreich has attested under oath that in 2013 he was given an opportunity to walk through the house and that he reported "seeing and commenting upon substantial water staining on the

2

drywall on at least the western wall of the lower level of the House." See Declaration of Steven Schwartzreich at ¶ 5. The serious water intrusion issues described in the Stanisz Report is entirely consistent with and would clearly support the existence of visible water staining on drywall in the house such as that Mr. Schwartzreich reportedly witnessed in 2013.

October 27, 2017

RON AMASS