IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02875-MEH

PRIMA PARTNERS, LLC,

      Plaintiff/Counter Defendant,

v.

LINDA L. WATERHOUSE, in her individual capacity and in her capacity as executor of the
Estate of Stephen L. Waterhouse,
ESTATE OF STEPHEN L. WATERHOUSE,
STEPHEN E. TISMAN, in his capacity as executor of the Estate of Stephen L. Waterhouse,

      Defendants/Counter Claimants.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Defendants/Counter Claimants Linda L. Waterhouse, Stephen E. Tisman, and Estate of

Stephen L. Waterhouse (collectively "the Waterhouses") seek summary judgment on Plaintiff/

Counter Defendant Prima Partners, LLC's claims for breach of contract, fraudulent

misrepresentation, fraudulent concealment, attorney's fees, and exemplary damages. Prima

Partners' claims arise from the Waterhouses' purported failure to disclose extensive mold, a history

of water intrusion, and a roof leak prior to closing on property Prima Partners purchased.

      Disputed issues of material fact exist as to Prima Partners' breach of contract claim for all

of the purportedly undisclosed issues. Regarding Prima Partners' fraud claims, I grant summary

judgment as to the mold and water intrusion problems, because the evidence undisputedly

demonstrates that, prior to closing, Prima Partners knew of these issues. However, I find that

disputed issues of material fact exist as to Prima Partners' knowledge that the roof would leak once

snow and ice formed. Accordingly, I grant in part and deny in part the Waterhouses' Motion for Summary Judgment.

Additionally, Prima Partners seeks summary judgment on the Waterhouses' counterclaim for attorney's fees under Colorado Revised Statute § 13-17-102. I find that the Waterhouses improperly assert this counterclaim as a substantive cause of action. Accordingly, I dismiss this claim with prejudice. However, I deny Prima Partners' motion to the extent it asks me to enter judgment on this claim. Therefore, I grant in part and deny in part Prima Partners' Motion for Summary Judgment on the Waterhouses' Counterclaims.

## BACKGROUND

### I.    Factual Background

The evidence submitted by the parties reveals the following undisputed material facts.

1.    The Waterhouses owned real property in Vail, Colorado until September 22, 2016, when they sold it to Prima Partners. Defs.' Statement of Facts ¶¶ 1, 4, ECF No. 58; Pl.'s Resp. to Defs.' Mot. for Summ. J. 4, ECF No. 64.

2.    Prima Partners is a Colorado limited liability company owned by James Butterworth and his wife, Dr. Sarah Smith ("Dr. Smith" or "Sallie Smith"). Defs.' Statement of Facts ¶ 3; Pl.'s Resp. to Defs.' Mot. for Summ. J. 4.

3.    The Waterhouses' residence was built in 1967 as a stand-alone home. However, subsequent renovations added an adjoining residence, resulting in a duplex. Defs.' Statement of Facts ¶ 2; Pl.'s Resp. to Defs.' Mot. for Summ. J. 4.

4.    In September 2011, Mr. Waterhouse discussed fixing a "basement water problem" with his property manager, Diane Milligan. This involved "outside drain work" and inside work,

such as "caulking the foundation wall and also sealing it with a water repellant product." ECF No. 64-5, at 3.

5. In 2013, Steven Schwartzreich considered purchasing the Waterhouses' property. While conducting an informal inspection of the house, Mr. Schwartzreich noticed "substantial water staining on the drywall on at least the western wall of the lower level of the House." Decl. of Steven Schwartzreich ¶ 5, ECF No. 64-7.

6. In March 2015, the Waterhouses sent an email to their property manager stating that a water leak occurred in the "small bedroom." ECF No. 64-5, at 2.

7. In May 2016, a different property manager, Glen Susmilch, informed Mr. Waterhouse that he "found a small amount of mold on the ceiling next to the exhaust fan in the east bathroom down stairs." After further investigation, Mr. Susmilch discovered "considerable condensation" in the ceiling, and he came to the conclusion that "water is seeping into the house from the deck directly under the living room windows . . . ." *Id.* at 14.

8. Mr. Susmilch also had someone inspect the roof on the Waterhouses' property, and he noted that the roof was in "critical" condition. *Id.* at 13.

9. Two months later, on July 11, 2016, Prima Partners entered into a contract to purchase the Waterhouses' property for $5,400,000.00. Defs.' Statement of Facts ¶ 5; Pl.'s Resp. to Defs.' Mot. for Summ. J. 4; Contract to Buy and Sell Real Estate, ECF No. 58-4.

10. Provision 10.2 of the parties' contract required the Waterhouses to disclose "any latent defects actually known by [them]." Contract to Buy and Sell Real Estate 10.

11. The Waterhouses timely delivered their property disclosures to Prima Partners on July 15, 2016. Defs.' Statement of Facts ¶ 7, Pl.'s Resp. to Defs.' Mot. for Summ. J. 4.

12. Among other statements, the Waterhouses informed Prima Partners that "moisture and/or water problems" have never existed in the house, the roof should be replaced within the next one to two years, there was a minor leak in the northwest corner of the dining room due to an "ice block on roof," there are no present roof leaks, and the property has experienced only minor flooding or drainage problems.  Property Disclosures, ECF No. 58-5.

13. After receiving the disclosures, Prima Partners hired Ron Amass to perform an inspection on July 20, 2016.  Among other issues, the inspection revealed that the roof was near or at the end of its service life and that mold was growing on the lower east bedroom wall.  Mr. Amass recommended that Prima Partners conduct a further review to gain a better understanding of the condition.  Amass Inspection Report 21, 48, ECF No. 58-8.

14. The Waterhouses hired SteamMaster to remediate the mold growing on the lower east bedroom wall.  Dep. of Gary Gilman, 44:17–45:6, May 19, 2017 ("Gilman dep."), ECF No. 58-74.

15. Mr. Amass subsequently informed Mr. Butterworth that it would "be advisable . . . to get back in and reinspect [the remediated] area and any other areas that potentially could have mold."  Dep. of James Butterworth, 99:19–100:12, September 15, 2017 ("Mr. Butterworth dep."), ECF No. 58-63.

16. Mr. Butterworth then told Ron Byrne (the real estate broker for the sale) that he would like to further inspect the property, because SteamMaster was not asked to diagnose the cause of the mold and it closed the affected area before Mr. Amass could further inspect it.  Additionally, Mr. Butterworth stated that the insulation SteamMaster removed was damp, which might be caused by compromised deck flashing or waterproofing.  ECF No. 58-10,

at 3.

17. Mr. Byrne responded that they "can get Ron Amass back in after a heavy rain after the Waterhouses departure for further inspection." *Id.*

18. On August 2, 2016, Josh Yandle performed an inspection on the roof. Mr. Yandle stated that the "[e]xisting cedar shake roof is in poor condition but may be able to go a few more years with repairs. . . . Prior to winter I would suggest blowing all debris off the roof and clearing the gutter/downspouts with water. This will be a very high priority to try to eliminate the potential for ice/dam accumulation." Mr. Yandle proposed making $2,250.00 in repairs. Yandle Inspection Report 2, ECF No. 58-11.

19. Despite the issues Mr. Yandle found, he did not "know for sure [when], and if [the roof is] going to leak." Dep. of Josh Yandle, 76:15–:22, August 31, 2017 ("Yandle dep."), ECF No. 58-12.

20. After receiving Mr. Yandle's report, Mr. Butterworth emailed Mr. Byrne to discuss outstanding issues with the property. Mr. Butterworth stated that "several rooftop separations . . . need to be sealed with a roofing mastic to prevent moisture intrusion" and "several missing shingles need to be replaced." Mr. Byrne agreed to pay for these repairs. ECF No. 58-10, at 2.

21. On August 4, 2016, Mr. Butterworth discussed proposed renovations with his architect, Mike Suman. Among other plans, the architect noted that Mr. Butterworth planned to "[f]ix waterproofing over lower bedroom" and "[r]eplace roof finish." Suman Proposal 3, ECF No. 58-16.

22. Prima Partners did not submit an inspection objection before the August 9, 2016 deadline.

Defs.' Statement of Facts ¶ 13–14, Pl.'s Resp. to Defs.' Mot. for Summ. J. 5.

23. At a baby shower in August 2016, Dr. Smith learned that "there might be a larger mold problem in the basement." Specifically, Ms. Schwartzreich informed Dr. Smith that she and her husband were considering buying the house in 2013, and they discovered probable mold around the basement interior walls. Dep. of Sarah Smith, 34:17–36:3, September 14, 2017 ("Dr. Smith dep."), ECF No. 58-23.

24. On August 21, 2016, Mr. Butterworth explained to Mr. Suman the details of Dr. Smith's conversation with Ms. Schwartzreich. Dr. Smith learned that Ms. Schwartzreich and her husband "found mold in multiple places in the basement," "the dining room was constructed . . . in a way that creates a leak," and "[t]heir conclusion was that the entire basement needed to be redone." ECF No. 58-22.

25. Also on August 21, 2016, Mr. Waterhouse informed Mr. Byrne that he and his wife "expect no one on the property until the Closing is completed." ECF No. 64-10; ECF No. 58-22 (email from Mr. Butterworth to Mr. Suman stating that they will not "have access to the house in the next couple of days, if at all prior to closing").

26. Mr. Butterworth and Dr. Smith subsequently hired an attorney, Kimberly Lord, who sent a letter to the Waterhouses' attorney, John Dunn, on August 24, 2016. ECF No. 58-38, at 3–6.

27. Ms. Lord voiced her concern with the Waterhouses' refusal to permit access to the property. According to Ms. Lord, the Waterhouses' actions were especially troubling, because "Buyer just learned that Sellers apparently knew there were material mold and water issues in the house when they provided disclosures to the contrary, and that the mold and water issues are likely more extensive than what was discovered through the Buyer's recent home

inspection." *Id.*

28. Six days later, Ms. Lord sent a follow-up letter to Mr. Dunn stating that, notwithstanding the Waterhouses' refusal to grant the access to the property, Mr. Butterworth and Dr. Smith "intend[] to move forward under the Contract reliant upon the disclosures and statements provided by Sellers . . . ." *Id.* at 7.

29. The Waterhouses later agreed to provide Mr. Butterworth and Dr. Smith two opportunities to walk through the property prior to closing. The first of these occurred on September 16, 2016. Defs.' Statement of Facts ¶¶ 46–47; Pl.'s Resp. to Defs.' Mot. for Summ. J. 10.

30. On September 19, 2016, Dr. Smith contacted mold expert Jim Baker about performing an inspection on the property. Dr. Smith "expressed concerns that she thought there was an issue with the odor," and she "suspected that there had to be mold." ECF No. 74-10; Dep. of Jim Baker, 48:1–:11, December 5, 2017 ("Baker dep."), ECF No. 74-11.

31. Mr. Butterworth and Dr. Smith performed their second "walk through" of the property on the day of closing—September 22, 2016. Defs.' Statement of Facts ¶ 48; Pl.'s Resp. to Defs.' Mot. for Summ. J. 10.

32. During their two final pre-closing opportunities to visit the property, Mr. Butterworth and Dr. Smith brought with them only Scott Lindall, one of their architects. Defs.' Statement of Facts ¶ 50; Pl.'s Resp. to Defs.' Mot. for Summ. J. 10.

33. The parties closed on the property on September 22, 2016. *See* Defs.' Statement of Facts ¶¶ 46, 48; Pl.'s Resp. to Defs.' Mot. for Summ. J. 10.

34. The day after the closing, Mr. Baker performed a mold inspection at the property. Mr. Baker noted that there were visible signs of moisture on the walls and "musty odors" in the basement and some of the bedrooms. After performing a variety of tests, Mr. Baker

concluded that a substantial amount of mold existed in the house, there was clear evidence of substantial and repeated water intrusion, the water intrusion was the cause of the mold, and the mold was at a significant enough level that it needed to be remediated. Report of Jim Baker, ECF No. 64-15.

35. Additionally, the roof started leaking in January 2017 when snow and ice built up on it. Aff. of James Butterworth ¶ 5, ECF No. 64-1; Aff. of Sallie Smith ¶ 5, ECF No. 64-2.

## II.    Procedural History

Prima Partners initiated this case prior to closing on September 15, 2016, because the Waterhouses at that time were stating reluctance to proceed with the sale. Compl., ECF No. 4. The initial Complaint sought specific performance of the parties' real property contract. *Id.* After closing, Prima Partners amended its Complaint to assert claims for breach of contract and fraud. First Am. Compl., ECF No. 5. The Waterhouses removed the case to this Court on November 23, 2016. Notice of Removal, ECF No. 1.

On December 5, 2016, the Waterhouses filed their initial Answer and Counterclaim, ECF No. 11. The Waterhouses asserted a single counterclaim for attorney's fees arising out of frivolous litigation pursuant to Colo. Rev. Stat. § 13-17-102. *Id.* ¶¶ 39–41.

After I granted in part and denied in part Prima Partners' Motion to Amend, Prima Partners filed the operative Second Amended Complaint on April 25, 2017. Second Am. Compl., ECF No. 35. Prima Partners asserts causes of action for: (1) breach of contract, (2) fraudulent misrepresentation, (3) fraudulent concealment, (4) attorney's fees, and (5) exemplary damages. *Id.* ¶¶ 21–53. Prima Partners' claims are based on its purported post-closing discovery of dangerous forms of mold, a long history of water damage to the property, and extensive leaking problems with

the roof.[1]  *Id.* ¶¶ 18–19.

The Waterhouses then moved to amend their Answer and Counterclaims to assert causes of action for outrageous conduct and prevailing party attorney's fees.  Mot. for Leave to File Amended Answer & Countercl., ECF No. 38.  The Waterhouses later withdrew their outrageous conduct claim, and I found that the Waterhouses failed to show good cause for an amendment of the Scheduling Order to add their prevailing party attorney's fees claim.  Order on Mot. for Leave to File Amended Answer & Countercl., ECF No. 48.  Accordingly, the Waterhouses' only counterclaim is for attorney's fees due to frivolous litigation.

On January 26, 2018, the Waterhouses filed the present Motion for Summary Judgment, ECF No. 58.  The Waterhouses contend Prima Partners fails to establish fraud claims, because the undisputed evidence shows they were unaware of the issues underlying Prima Partners' claims, and Prima Partners knew of the asserted defects.  *Id.* at 22–25.  Prima Partners responded to the Waterhouses' motion on February 16, 2018.  Pl.'s Resp. to Defs.' Mot. for Summ. J., ECF No. 64.  Prima Partners argues that the Waterhouses' and Prima Partners' pre-closing knowledge of the property defects is disputed.  *Id.* at 17–20.  To establish an issue of fact regarding its ignorance of the problems, Prima Partners primarily relies on the affidavits of Mr. Butterworth and Dr. Smith.  Pl.'s Statement of Facts ¶ 14, ECF No. 64; Aff. of James Butterworth, ECF No. 64-1; Aff. of Sallie Smith, ECF No. 64-2.  The Waterhouses subsequently filed a reply brief.  Reply in Supp. of Defs.' Mot. for Summ. J., ECF No. 74.

On April 17, 2018, I requested supplemental briefing on the extent to which Prima Partners' pre-closing knowledge of the property issues affects its breach of contract claims.  ECF No. 81.  The

---

[1] Prima Partners withdrew its allegations regarding asbestos.  ECF No. 50.

parties filed their supplemental briefs on April 23, 2018. Defs.' Suppl. Br., ECF No. 82; Pl.'s Suppl. Br., ECF No. 83. The parties agree that Prima Partners' knowledge is relevant only to the Waterhouses' waiver defense. Defs.' Suppl. Br. 1; Pl.'s Suppl. Br. 2. Prima Partners contends the evidence demonstrates disputed issues of fact as to its awareness of the defects and as to its knowledge of the consequences of proceeding to closing based on the information in its possession. Pl.'s Suppl. Br. 2–3. The Waterhouses assert that Prima Partners waived its right to assert a breach of contract claim by failing to file an inspection objection prior to the deadline. Defs.' Suppl. Br. 2–7.

Prima Partners separately filed a Motion for Summary Judgment on the Waterhouses' counterclaim. Pl.'s Mot. for Summ. J., ECF No. 60. Prima Partners contends the Waterhouses' claim for attorney's fees is not a substantive cause of action under Colorado law. *Id.* at 4. Alternatively, Prima Partners asserts it is entitled to summary judgment on the counterclaim, because its affirmative claims are not frivolous, groundless, or vexatious. *Id.* at 4–7. In response, the Waterhouses agree that their counterclaim is not appropriate as a distinct cause of action; however, they ask that I dismiss their claim without prejudice. Defs.' Resp. to Pl.'s Mot. for Summ. J., ECF No. 68. Prima Partners replies that I should either enter summary judgment in its favor or dismiss the Waterhouses' counterclaim with prejudice. Pl.'s Reply in Supp. of Mot. for Summ. J., ECF No. 71.

## **LEGAL STANDARD**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Courts shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."); *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v.*

*Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

I first address the Waterhouses' Motion for Summary Judgment. I grant the Waterhouses' motion with regard to Prima Partners' mold- and water-related fraud claims, and I deny the motion in all other respects. I then grant in part and deny in part Prima Partners' motion for summary judgment, and I dismiss the Waterhouses' counterclaim with prejudice.

## I.    The Waterhouses' Motion for Summary Judgment

### A.    Breach of Contract Claim

To overcome summary judgment on its breach of contract claim, Prima Partners must produce evidence of: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (internal citations omitted). It is undisputed that there are at least triable issues of fact as to whether a valid contract existed, whether Prima Partners performed on the contract by closing on the property, and whether Prima Partners suffered damages. Therefore, the only disputed element at this stage is the Waterhouses' performance of the contract. Prima Partners contends the Waterhouses breached provision 10.2, which requires that the Waterhouses disclose "latent defects actually known by [them]." Am. Compl. ¶ 24, ECF No. 35; Contract to Buy and Sell Real Estate 9, ECF No. 35-1. Albeit in the context of Prima Partners' fraud claims, the Waterhouses contend they disclosed all defects of which they had knowledge. Defs.' Mot. for Summ. J. 23–24, ECF No. 58. I find that Prima Partners demonstrates disputed issues of material fact regarding the Waterhouses'

performance of provision 10.2 for all of the defects underlying its claims.

1. The Existence of Mold in the Lower Level of the House

Prima Partners demonstrates a triable issue of fact as to the Waterhouses' failure to disclose a known mold issue. The Waterhouses indicated that water and/or moisture problems do not and have never existed at the house, Property Disclosure 2, ECF No. 58-5, and evidence in the record indicates the Waterhouses knew of mold problems. A 2016 email from the Waterhouses' property manager to Mr. Waterhouse states that the manager "found a small amount of mold on the ceiling next to the fan in the east bathroom down stairs," and "considerable condensation in the ceiling." *Id.* at 14. Additionally, Jim Baker—Prima Partners' mold inspector—noted musty odors that are unmistakable for mold. Report of Jim Baker 2–4, ECF No. 64-15. Finally, as I explain below with regard to the property's history of water intrusion, significant evidence indicates that the Waterhouses were aware of water intrusion events at the property, which provides circumstantial proof that they knew mold formed as a result. *See* ECF No. 64-5 (emails between Mr. Waterhouse and his property manager discussing water intrusion events); Decl. of Steven Schwartzreich ¶ 5, ECF No. 64-7. If a jury chooses to accept this evidence, it could reasonably find that the Waterhouses breached the contract by failing to disclose all known latent defects.

Further, the Waterhouses are not entitled to summary judgment because of their waiver defense. As an initial matter, the Waterhouses did not raise this defense in the present briefing until I requested supplemental briefing. Although the Waterhouses argued generally that Prima Partners had knowledge of the mold, they argued this in the context of Prima Partners' fraud claims. Defs.' Mot. for Summ. J. 23–25, ECF No. 58. In fact, other than by asking that I dismiss this case in its entirety, the Waterhouses' motion is confined entirely to Prima Partners' fraud claims. It would be improper to grant summary judgment in favor of the Waterhouses on a defense they failed to raise

in the present motion.[2]

Additionally, although I find below that Prima Partners had knowledge of the mold, a disputed issue of fact exists as to whether Prima Partners knew it was waiving its right to sue for breach of contract. Under Colorado law, a party waives his right to bring a claim when, by words or conduct, he indicates intent to voluntarily abandon the right. *Colo. Bank & Tr. Co. v. W. Slope Invs.*, 539 P.2d 501, 503 (Colo. App. 1975); *Intelligent Elecs., Inc. v. Digital Origin, Inc.*, No. CIV.A. 97-B-1554, 2000 WL 680359, at *12 (D. Colo. May 22, 2000). Thus, "for a wavier to exist, there must be a clear, unequivocal, and decisive act of the party showing such a purpose." *Intelligent Elecs., Inc.*, 2000 WL 680359, at *12. Here, the Waterhouses submit no evidence indicating that Prima Partners knew it was abandoning its right to bring a breach of contract claim by proceeding to closing. Accordingly, I cannot find that Prima Partners intended to abandon its claim as a matter of law.

The Waterhouses argue that Prima Partners indicated such intent by failing to file an inspection objection. Defs.' Suppl. Br. 3–6, ECF No. 82. However, the evidence demonstrating Prima Partners' knowledge, which I discuss below in relation to the fraud claims, is dated after the inspection objection deadline. Indeed, one of the main documents on which the Waterhouses rely in their supplemental brief is dated August 29, 2016—twenty days after the objection deadline. *See* Defs.' Suppl. Br. 6. Because Prima Partners' knowledge of the mold prior to the deadline is disputed, Prima Partners' failure to file an objection cannot undisputedly demonstrate its intent to

---

[2] Because I find that the Waterhouses failed to properly raise this defense for purposes of summary judgment, I do not address it as it relates to the other defects.

waive its right to bring a breach of contract claim.[3]

In sum, I find that disputed issues of material fact exist as to whether the Waterhouses breached the parties' contract by failing to disclose mold in the lower level of the property. Furthermore, the Waterhouses did not properly raise their waiver defense for purposes of this motion, and regardless, triable issues of fact exist as to whether the Waterhouses waived their right to bring a breach of contract claim.

### 2.    A Long History of Water Damage

Prima Partners next contends the Waterhouses breached the parties' contract by failing to disclose "[a] long history of water damage to various rooms in the Property over the course of many years." Am. Compl. ¶ 18, ECF No. 35. Prima Partners demonstrates a triable issue of fact with regard to this defect. First, the Waterhouses did not fully disclose a history of water damage. Instead, they stated that the property has had only minor drainage issues. Property Disclosures 5, ECF No. 58-5. Furthermore, the Waterhouses stated that water and/or moisture problems have never existed on the property. *Id.* at 2.

Second, Prima Partners produces evidence that the Waterhouses knew of more substantial water intrusion issues than they disclosed. In a 2011 email to his property manager, Mr. Waterhouse acknowledged that they have had a "basement water problem." ECF No. 64-5, at 3. Additionally, other emails reference a drainage issue affecting the back of the house. *Id.* at 5–14. The Waterhouses' property manager informed the Waterhouses that "water is seeping into the house

---

[3] This also differentiates the present case from the primary case on which the Waterhouses rely in their supplemental brief—*Becker v. Scherer*, No. 1-12-2331, 2013 WL 6458078 (Ill. App. Ct. Dec. 5, 2013) (unpublished). In that case, the court found a waiver, because it was undisputed that the buyers learned of the defects in the initial inspection report, which they received prior to the inspection objection deadline. *Id.* at *1–7.

from the deck directly under the living room windows where the exhaust vents exi[t] the building."
*Id.* at 12–14. Furthermore, Mr. Schwartzreich remembers seeing "substantial water staining on the drywall on at least the western wall of the lower level of the House" while inspecting the property in 2013. Decl. of Steven Schwartzreich ¶ 5, ECF No. 64-7. Finally, Prima Partners' expert opines that based on the condition of the house, he "would expect that the Waterhouses . . . would have had knowledge . . . that water intrusion problems existed." Expert Report of Ron Amass 2, ECF No. 64-17. I find this evidence sufficient to create a disputed issue of fact as to whether the Waterhouses had knowledge of a history of water intrusion beyond "only minor issues" similar to "any other mountain property lot." Property Disclosures 5. Therefore, summary judgment is not proper on Prima Partners' breach of contract claim as it relates to undisclosed water intrusion issues.

### 3. Roof Leak that Occurred When Snow and Ice Formed on the Roof

Lastly, Prima Partners asserts the Waterhouses are liable for breach of contract, because they failed to disclose "leaking problems" that occurred once "snow and ice built up on the roof." Am. Compl. ¶ 19, ECF No. 35. To prove its breach of contract claim as to the leaking roof, Prima Partners must show that the Waterhouses knew the roof would leak as soon as snow and ice built up on it, yet failed to disclose this issue.

Prima Partners demonstrates a disputed issue of material fact as to this defect. First, the Waterhouses did not inform Prima Partners of present roof leaks. To the contrary, the Waterhouses stated in their disclosures that there were no present leaks. Property Disclosures 2, ECF No. 58-5. Although the Waterhouses informed Prima Partners of a "minor leak in dining room n-west corner due to ice block on roof," this was in the section for past roof leaks. *Id.* Accordingly, a triable issue of fact exists as to whether the property disclosures put Prima Partners on notice that the roof would leak as soon as snow and ice built up on it.

Second, Prima Partners has submitted sufficient evidence to demonstrate a disputed issue of fact as to whether the Waterhouses knew of present roof leaks. Perhaps most importantly, Mr. Waterhouse admitted in his deposition testimony that "there would be a leak the next winter" if snow and an ice dam built up on the roof. Mr. Waterhouse dep. 66:3–:15, ECF No. 64-4. Furthermore, emails between Mr. Waterhouse and his property manager in 2011 and 2015 reference leaks in the roof. ECF No. 64-5, at 1–2. Finally, although not direct evidence of the Waterhouses' knowledge, the Waterhouses' property manager emailed Mr. Waterhouse in May 2016 stating the roof was in "critical" condition and they should discuss the issues further. *Id.* at 13. I find that all of this evidence, taken together and viewed in a light most favorable to Prima Partners, creates a disputed issue of material fact as to whether the Waterhouses had knowledge of roof leaks beyond what they disclosed. As such, I decline to grant summary judgment on Prima Partners' claim that the Waterhouses violated provision 10.2 of the parties' contract.

### B.  Fraudulent Misrepresentation and Fraudulent Concealment Claims

To prove their fraudulent misrepresentation claim, Prima Partners must demonstrate that: (1) the Waterhouses made a fraudulent misrepresentation of material fact, (2) Prima Partners relied on the misrepresentation, (3) Prima Partners was justified in relying on the misrepresentation, and (4) the reliance resulted in damages. *See, e.g.*, *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994). Similarly, Prima Partners' fraudulent concealment claim requires:

> (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Nielson v. Scott*, 53 P.3d 777, 789 (Colo. App. 2002). Thus, both claims require that the seller had knowledge of the issues and that the buyer was ignorant of the defects prior to closing. *See Nielson*

*v. Scott*, 53 P.3d 777, 780 (Colo. App. 2002) (stating that a plaintiff must demonstrate "the person to whom the representation was made [must be] ignorant of the falsity" to establish a claim for fraudulent misrepresentation); *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1116–17 (Colo. App. 2010) ("Where the plaintiff had actual knowledge of the truth or was put on inquiry notice, he could not justifiably rely on the defendant's misrepresentation." (citing *Nielson*, 53 P.3d at 780)). A party will be deemed to have knowledge of a defect if he has actual knowledge or if he has "access to information that was equally available to both parties and would have led to the true facts." *M.D.C./Wood, Inc.*, 866 P.2d at 1382. Because I have already found that disputes issues of fact exist as to the Waterhouses' knowledge of the defects, I must analyze only whether Prima Partners lacked knowledge.[4]

### 1. Mold and a History of Water Intrusion

Prima Partners does not demonstrate a disputed issue of material fact as to whether it "was not on inquiry notice" of the mold and water issues throughout the lower level of the property. It had such notice. As I detail below, the Waterhouses submit evidence indicating that Mr. Butterworth and Dr. Smith—the two owners of Prima Partners—had actual knowledge of these problems, and Prima Partners does not introduce evidence contradicting this. As a result, Prima Partners did not justifiably rely on the allegedly fraudulent property disclosures. *See Loveland Essential Grp., LLC*, 251 P.3d at 1116–17 ("Where the plaintiff had actual knowledge of the truth or was put on inquiry notice, he could not justifiably rely on the defendant's misrepresentation." (citing *Nielson*, 53 P.3d at 780)).

First, the Waterhouses meet their burden of producing evidence showing that Prima Partners

---

[4] The Waterhouses do not contend that summary judgment is proper on any of the other elements of the fraud claims. *See* Defs.' Mot. for Summ. J. 22–25.

knew of the water intrusion and mold issues. Regarding a history of water intrusion, Mr. Butterworth emailed Ron Byrne on August 2, 2016 noting that his roof specialist found "several rooftop separations [that] need to be sealed with a roofing mastic to prevent moisture intrusion." ECF No. 58-10, at 2. Additionally, Mr. Butterworth stated that insulation pulled out of the walls was damp, which could be the result of compromised deck flashing/waterproofing or a leaking irrigation system. *Id.* at 3. An email from Mr. Butterworth to his architect mentions that he recently learned mold in the house may be caused by "the way drainage occurs on the West and SW of the property, where it does seem to funnel right down to the house." ECF No. 58-22, at 1. Perhaps most telling, Prima Partners' attorney sent a letter to the Waterhouses' attorney on August 24, 2016 requesting access to the property, because "Buyer just learned that Sellers apparently knew there were material *mold and water issues* in the house when they provided disclosures to the contrary, and that the mold and water issues are likely more extensive than what was discovered through Buyer's recent home inspection." ECF No. 58-38, at 4 (emphasis added). The letter acknowledged that Prima Partners "recently learned [information] regarding mold and water issues on the property." *Id.* Thus, the evidence indicates Prima Partners had knowledge of a long-standing water intrusion problem on the property.

As for mold in the lower level of the property, in addition to the letter drafted by Prima Partners' attorney, Dr. Smith testified she "heard from the grapevine" that "there might be a larger mold problem in the basement." Dr. Smith dep. 34:9–35:6, ECF No. 58-23. Furthermore, Dr. Smith received an email on September 19, 2016 from Jim Baker confirming that she shared her "mold concerns" with Mr. Baker. ECF No. 74-10, at 1. When testifying about this conversation in his deposition, Mr. Baker stated Dr. Smith "suspected that there had to be mold." Baker dep. 48:4–:7, ECF No. 74-11. Finally, an August 21, 2016 email from Mr. Butterworth to Mr. Suman stated that

individuals who considered buying the property in 2013 "found mold in multiple places in the basement" and concluded "that the entire basement needed to be redone." ECF No. 58-22. All of this evidence is dated prior to the September 22, 2016 closing, and it supports a finding that Prima Partners had actual knowledge of mold and water issues in the lower level of the property or had access to sufficient information to discover the true facts.[5]

Second, Prima Partners does not submit admissible evidence indicating it was ignorant of the mold and water issues. In support of its statement of fact that it "had no knowledge, prior to Closing, of any water intrusion and mold issues," Prima Partners cites only to Mr. Butterworth's and Dr. Smith's affidavits. Pl.'s Statement of Facts ¶ 14, ECF No. 64. These affidavits state, "we learned about all of the issues [the Waterhouses'] failed to disclose only after we had closed on the Property." Aff. of James Butterworth ¶ 6, ECF No. 64-1; Aff. of Sallie Smith ¶ 6, ECF No. 64-2. However, I cannot consider these conclusory and self-serving statements, because they directly contradict all the evidence in the record. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("[C]onclusory and self-serving affidavits are not sufficient."); *Frontrange Sols. USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 829–30 (D. Colo. 2007) (declining to consider affidavits, because they were replete with "statements indicating no personal knowledge at all, and self-serving assertions not corroborated by reference to any record evidence or contradicted by the evidence or the affiant's previous deposition testimony"); *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) (stating that assertions in affidavits that are not supported by corroborating

---

[5] Prima Partners makes much of its contention that the Waterhouses refused access to the property, such that it could not further investigate its concerns. However, it is undisputed that Prima Partners subsequently conducted two unrestricted "walk throughs" of the property. Defs.' Statement of Facts ¶¶ 46–48; Pl.'s Resp. to Defs.' Mot. for Summ. J. 10. Mr. Butterworth and Dr. Smith do not dispute that they could have brought a mold specialist with them on either of these occasions.

evidence in the record are not sufficient to create a genuine question of material fact precluding summary judgment). Indeed, as explained above, the evidence other than the affidavits supports the notion that, prior to closing, Prima Partners was aware of extensive mold and a history of water intrusion issues.

To be sure, the evidence in the record indicates only that Prima Partners knew generally of mold and a history of water intrusion resulting from drainage, instead of knowledge of the specific locations and types of mold Mr. Baker discovered post-closing and the specific instances of water intrusion that had occurred as a result of drainage. However, the evidence also does not indicate that the Waterhouses had disproportionately greater knowledge of the specific types of mold discovered in the house. To the contrary, the evidence I discuss above with regard to Prima Partners' breach of contract claim demonstrates only that the Waterhouses may have had general knowledge of mold growth in the lower level of the property. Accordingly, the record does not support a finding that the Waterhouses concealed information regarding specific instances of mold. Similarly, although Prima Partners presents some evidence of specific water intrusion events of which it was not aware, Prima Partners does not claim damages due to the Waterhouses' failure to disclose any one specific water intrusion event. Instead, Prima Partners contends the Waterhouses fraudulently failed to disclose a "long history of water damage to various rooms in the Property over the course of many years." Am. Compl. ¶ 18. The undisputed evidence indicates that Prima Partners was aware of this history of water damage. Because Prima Partners submits no admissible evidence indicating it had any less knowledge than the Waterhouses regarding the mold and history of water intrusion at the property, Prima Partners fails to demonstrate a disputed issue of fact as to its fraud claims to the extent they are based on the mold and water intrusion defects.

2. Roof Leak that Occurred When Snow and Ice Formed on the Roof

Unlike the mold- and water-related issues, the Waterhouses do not submit evidence undisputedly establishing that Prima Partners knew the roof would leak once snow and ice built up on it. Although the property disclosures state that there was a prior minor leak in the northwest corner of the dining room due to an ice block on the roof, this did not undisputedly put Prima Partners on notice that the roof had a present leak. The other evidence to which the Waterhouses cite supports a finding that Prima Partners knew only that the roof was in a generally poor condition and needed to be replaced. For example, the Waterhouses rely on Josh Yandle's inspection report, which stated that the roof was in poor condition and needed to be cleaned to "eliminate the potential for ice/dam accumulation." Report of Josh Yandle 2, ECF No. 58-11. Importantly, Mr. Yandle did not state that the roof would leak once snow and ice built up on it. Similarly, although Mr. Butterworth sent Mr. Byrne an email on August 2, 2016 explaining work that needed to be done on the roof, this email does not acknowledge a leak in the roof. ECF No. 58-10. Although a jury may find that Prima Partners had knowledge of the roof leak, the evidence does not establish Prima Partners' knowledge as a matter of law.

This is especially true in light of evidence suggesting that Prima Partners lacked knowledge of the leaking roof. Mr. Yandle testified during his deposition that, after inspecting the roof, he was not certain whether it would leak. Yandle dep. 76:15–:22, ECF No. 58-12. Furthermore, Mr. Butterworth and Dr. Smith both state in their affidavits that "neither the Defendants nor anyone else told me that the roof would leak as soon as any meaningful snow or ice built up on it. I was completely surprised when the roof started leaking as soon as snow and ice built up on it."[6] Aff. of

---

[6] Unlike the statements as to mold and water intrusion issues, the declarations regarding ignorance of a leaking roof are not entirely contradicted by the evidence in the record, and they

22

James Butterworth ¶ 5, ECF No. 64-1; Aff. of Sallie Smith ¶ 5, ECF No. 64-2.

In sum, I find that triable issues of fact exist as to Prima Partners' ignorance of present leaks in the roof. Accordingly, I decline to enter summary judgment on Prima Partners' fraud claims as they relate to the leaking roof.[7]

## II.    Prima Partners' Motion for Summary Judgment

Prima Partners' motion seeks summary judgment (or dismissal) of the Waterhouses' sole counterclaim for attorney's fees due to frivolous, groundless, or vexatious litigation under Colo. Rev. Stat. § 13-17-102. Pl.'s Mot. for Summ. J., ECF No. 60. That statute permits courts to award reasonable attorney's fees against any attorney or party who brings or defends an action that lacked substantial justification. Colo. Rev. Stat. § 13-17-102(2). The statute defines "substantial justification" as, "substantially frivolous, substantially groundless, or substantially vexatious." *Id.* at § 13-17-102(4). Prima Partners contends that I should dismiss this cause of action, because Section 13-17-102 does not create a substantive claim for relief under Colorado law. Pl.'s Mot. for Summ. J. 4. Alternatively, Prima Partners asks me to enter summary judgment in its favor, because the claim fails as a matter of law. *Id.* at 4–7. The Waterhouses agree that Section 13-17-102 does not create a cause of action; however, they ask that I dismiss the counterclaim without prejudice so that they may seek fees and costs after the resolution of this case. Defs.' Resp. to Mot. for Summ. J. 3, ECF No. 68.

A litigant cannot bring a request for attorney's fees pursuant to Section 13-17-102 as a

_____

are not as conclusory as the other statements. Accordingly, I may consider the affidavits in determining whether a disputed issue of material fact exists as to the leaking roof.

[7] Because Prima Partners submits evidence that the Waterhouses concealed information regarding prior and present roof leaks and affirmatively misrepresented that there were no present roof leaks in the disclosures, I decline to enter summary judgment on either fraud claim.

substantive claim for relief. *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1029 (D. Colo. 2014); *Philbosian v. First Fin. Secs. Corp.*, No. 82-K-773, 1983 WL 1409, at *2 (D. Colo. Feb. 9, 1983) (stating that Section 13-17-101 "is merely grounds for the award of monetary damages after the substantive claims have been resolved which can be set forth in the prayer for relief"); *see Kazazian v. Emergency Serv. Physicians, P.C.*, 300 F.R.D. 672, 677 (D. Colo. 2014) ("Colorado courts characterize § 13–17–102 as a sanction, rather than a substantive right."). Therefore, just as the court did in *Purzel Video GmbH*, I dismiss this claim and permit the Waterhouses to move for attorney's fees if judgment is entered in their favor.[8] 11 F. Supp. 3d at 1029.

I deny Prima Partners' alternative request that I enter judgment on this claim. Prima Partners acknowledges that this is not a substantive claim for relief. Pl.'s Mot. for Summ. J. 4. Thus, it would be improper to enter judgment on this counterclaim. Furthermore, I find it most efficient for the Waterhouses to have the benefit of this order and a trial on the merits before deciding whether to move for attorney's fees on the basis that Prima Partners' claims are frivolous. If a jury finds in favor of the Waterhouses and the Waterhouses have a good faith belief that Prima Partners did not present a rational argument supported by credible evidence, they may choose to file a motion for attorney's fees at that time.[9]

## CONCLUSION

Regarding the Waterhouses' Motion for Summary Judgment, I find that disputed issues of

---

[8] The Waterhouses request that I dismiss this claim without prejudice. Because a claim under Section 13-17-101 is never proper as a substantive cause of action, dismissal with prejudice is appropriate. However, dismissal with prejudice does not preclude the Waterhouses from requesting attorney's fees under Section 13-17-101 if judgment is entered in their favor.

[9] In deciding whether to file such a motion, the Waterhouses should be mindful that I have the inherent authority to issue sanctions for any motion brought in bad faith or without justification. *See Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000).

material fact exist as to Prima Partners' breach of contract claim. I also find triable issues of fact underlying Prima Partners' claim that the Waterhouses fraudulently misrepresented and concealed a leaking roof. However, the undisputed evidence demonstrates that Prima Partners had knowledge of mold in the lower level of the house and a history of water intrusion problems. Accordingly, summary judgment in favor of the Waterhouses is proper on Prima Partners' fraud claims to the extent they assert the Waterhouses misrepresented and concealed mold and water intrusion defects. The Waterhouses' Motion for Summary Judgment [filed January 26, 2018; ECF No. 58] is **granted in part and denied in part.**

As for Prima Partners' Motion for Summary Judgment, I find that the Waterhouses improperly assert a substantive claim for attorney's fees pursuant to Colo. Rev. Stat. § 13-17-102. As such, I dismiss the counterclaim with prejudice. However, I decline to enter judgment in favor of Prima Partners on this claim. Thus, Prima Partners' Motion for Summary Judgment [filed January 26, 2018; ECF No. 60] is **granted in part and denied in part**.

Entered and dated at Denver, Colorado, this 1st day of May, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge