IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02875-MEH

PRIMA PARTNERS, LLC,

    Plaintiff,

v.

LINDA L. WATERHOUSE, in her individual capacity and in her capacity as executor of the Estate of Stephen L. Waterhouse,
ESTATE OF STEPHEN L. WATERHOUSE,
STEPHEN E. TISMAN, in his capacity as executor of the Estate of Stephen L. Waterhouse,

    Defendants.

# ORDER

**Michael E. Hegarty, United States Magistrate Judge.**

    Plaintiff Prima Partners, LLC seeks to exclude the testimony of Robert A. Woellner—an expert designated by Defendants Linda L. Waterhouse, Estate of Stephen L. Waterhouse, and Stephen E. Tisman (collectively "the Waterhouses"). I find that four of Mr. Woellner's opinions improperly invade the province of the jury and are not helpful to the jury's resolution of Prima Partners' claims. Specifically, Mr. Woellner may not testify as to the Waterhouses' knowledge of mold growth, the parties' agreement prior to closing, whether the Waterhouses promptly addressed all moisture and mold issues, and the conditions in the underlying property that are normal and typical. However, I will allow Mr. Woellner to opine that certain conditions in the property indicate limited exposure to moisture, that the presence of a musty odor may be caused by the home being closed to outdoor air for approximately ten months, and that homeowners are generally unaware of unseen defects. Accordingly, I grant in part and deny in part Prima Partners' Motion to Exclude

Disclosed Opinion Testimony of Defendants' Expert Robert A. Woellner.

**BACKGROUND**

This case arises out of Prima Partners' purchase of real property from the Waterhouses. Am. Compl., ECF No. 35. Prima Partners asserts the Waterhouses knowingly failed to disclose an extensive mold problem in the lower level of the property, a history of water intrusion issues, and a leak in the roof. *Id.* ¶¶ 18–19. Prima Partners asserts claims for breach of contract, false representation, fraudulent concealment, attorney's fees, and exemplary damages. *Id.* ¶¶ 21–53. I granted the Waterhouses' Motion for Summary Judgment only as to the fraud claims and only as they relate to the first two defects. Order on Defs.' Mot. for Summ. J., ECF No. 84.

On September 29, 2017, the Waterhouses served Mr. Woellner's initial expert report. Initial Expert Report of Robert A. Woellner, ECF No. 59-1. Mr. Woellner is an industrial hygienist who regularly provides environmental assessments and inspections for real property. *Id.* at 18. Mr. Woellner's initial report reviews the evidence in this case and opines that (1) various issues and imperfections in the underlying residence are normal and typical for homes of similar age and location, (2) he has seen no evidence that the Waterhouses knew of asbestos in the home,[1] (3) he has seen no evidence that the Waterhouses had knowledge of remaining unmitigated mold growth in the home, (4) and all parties agreed prior to closing that the roof needed to be replaced. *Id.* at 3–9.

The Waterhouses served Mr. Woellner's rebuttal report on October 26, 2017. Rebuttal Expert Report of Robert A. Woellner, ECF No. 59-2. In this report, Mr. Woellner rebuts two of Prima Partners' expert reports. *Id.* Mr. Woellner first disputes the experts' statements regarding the

---

[1] The parties agree that Mr. Woellner's opinions as to asbestos are irrelevant, because Prima Partners withdrew its asbestos allegations. *See* ECF No. 50. Accordingly, I do not address them in ruling on the present motion.

property's condition. *Id.* at 3. He then opines that it is common for unseen moisture and mold issues to be unknown to homeowners, and he states that the presence of a musty odor in a home that is closed for approximately ten months out of the year is normal and typical. *Id.* at 3–5. Lastly, he asserts that all moisture and mold issues known to the Waterhouses were promptly addressed. *Id.*

On January 26, 2018, Prima Partners filed the present motion to exclude Mr. Woellner from testifying. Mot. to Exclude, ECF No. 59. Prima Partners contends the following opinions are improper: (1) Mr. Woellner has seen no evidence indicating the Waterhouses had knowledge of asbestos in the home, (2) Mr. Woellner has seen no evidence demonstrating the Waterhouses knew of unmitigated mold growth in the home, (3) all parties agreed prior to closing that the roof needed to be replaced, and (4) all moisture and mold issues known to the Waterhouses were promptly addressed. *Id.* at 2. Prima Partners contends these opinions invade the province of the jury and are not true expert testimony. *Id.* at 3–5.

In response, the Waterhouses argue that Mr. Woellner is not opining as to ultimate issues, because he states only that he "has seen no evidence" of the Waterhouses' knowledge, not that the Waterhouses actually lacked knowledge. *Id.* at 3. Additionally, the Waterhouses argue that Mr. Woellner is qualified based on his experience to testify that it is common for homeowners to be unaware of unseen mold issues. *Id.* at 4. Finally, the Waterhouses assert that Mr. Woellner may permissibly offer opinions on what defects are normal and typical for homes of similar age, location, and construction. *Id.* at 6–9. Prima Partners subsequently filed a reply brief. Reply in Supp. of Mot. to Exclude, ECF No. 72.

## LEGAL STANDARDS

Federal Rule of Evidence 702 states, in pertinent part:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified to give opinions in a particular subject area. Rather, courts must perform a two-step analysis. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). First, courts determine whether the expert is qualified by "knowledge, skill, experience, training, or education," *id.* (quoting Fed. R. Evid. 702), and whether the testimony will assist the jury in understanding the evidence or determining a fact in issue. *See, e.g.*, *United Telecomms., Inc. v. Am. Television & Comm. Corp.*, 536 F.2d 1310, 1317 (10th Cir. 1976) ("[E]xpert testimony is not necessary where the matter in issue is such that the jury can be expected to draw the correct inferences from the facts presented.").

Next, the Court must assess the specific proffered opinions for relevance and reliability. *See 103 Investors I, L.P.,* 470 F.3d at 990; *see also* Fed. R. Evid. 702 (requiring that the testimony be "based upon sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods . . . to the facts of the case"). Rule 702 "imposes on the district court a gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon,* 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993)). To execute that function, the Court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular

4

set of facts." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert,* 509 U.S. at 592–93). When assessing reliability, "the court may consider several nondispositive factors: (1) whether the proffered theory can [be] and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community." *103 Investors I, L.P.,* 470 F.3d at 990 (citing *Daubert,* 509 U.S. at 593–94). These considerations are not exhaustive. Rather, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). Ultimately, the test requires that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Id.*

While the proponent of the challenged testimony has the burden of establishing admissibility, its proffer is tested against the standard of reliability, not correctness; a proponent need only prove that "the witness has sufficient expertise to choose and apply a methodology, that the methodology applied was reliable, that sufficient facts and data as required by the methodology were used and that the methodology was otherwise reliably applied." *United States v. Crabbe,* 556 F. Supp. 2d 1217, 1221 (D. Colo. 2008) (citing *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)). "[E]xclusion of expert testimony under Rule 702 'is the exception rather than the rule.'" *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 861 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee notes (2000)).

## ANALYSIS

I first find that three of Mr. Woellner's opinions improperly invade the province of the jury and are not necessary: (1) the Waterhouses lacked knowledge of mold growth, (2) the parties had

5

an agreement as to the roof, and (3) the Waterhouses promptly addressed all moisture and mold issues. Mr. Woellner's testimony details the factual background of this case, and based on this evidence, offers his opinions. Initial Expert Report of Robert A. Woellner 6–8, ECF No. 59-1; Rebuttal Expert Report of Robert A. Woellner 2–3, ECF No. 59-2. Weighing the evidence and determining whether it demonstrates a party's knowledge, a meeting of the minds, or whether the Waterhouses acted promptly is precisely the role of the jury. *Valencia v. Bos. Sci. Corp.*, No. 2:13-cv-12330, 2016 WL 2993214, at *2 (S.D. W. Va. May 23, 2016) ("I will not permit the use of experts to usurp the jury's fact-finding function by allowing an expert to testify as to a party's knowledge, state of mind, or whether a party acted reasonably."); *see In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (finding that expert testimony as to an entity's knowledge "is not a proper subject for expert or even lay testimony"). Indeed, the Waterhouses' knowledge of the defects is an element of three of Prima Partners' claims, and expert testimony is not permissible "as to any ultimate conclusions regarding the essential elements of [p]laintiffs' claims . . . ." *Landegger v. Cohen*, No. 11-cv-01760-WJM-CBS, 2013 WL 6633434, at *2 (D. Colo. Dec. 16, 2013); *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (affirming the district court's decision to admit expert testimony, in part because the expert "did not testify as to the legal elements necessary to establish fraud").

In their response brief, the Waterhouses contend the opinions do not usurp the role of the jury, because Mr. Woellner states only that he "has seen no evidence" of the Waterhouses' knowledge, not that the Waterhouses actually lacked knowledge. Resp. to Mot. to Exclude 3, ECF No. 65. However, the jury does not need expert testimony to determine whether evidence exists and whether it demonstrates a party's knowledge. *Eghnayem v. Bos. Sci. Corp.*, 57 F. Supp. 3d 658, 670

6

(S.D. W. Va. 2014) ("[A] party's knowledge [or] state of mind . . . are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury."); *United Telecomms., Inc. v. Am. Television & Comm. Corp.*, 536 F.2d 1310, 1317 (10th Cir. 1976) ("[E]xpert testimony is not necessary where the matter in issue is such that the jury can be expected to draw the correct inferences from the facts presented."). Accordingly, I decline to permit Mr. Woellner to offer opinions as to the lack of evidence he has seen of the Waterhouses' knowledge, the parties' agreement that the roof needed to be replaced, and the Waterhouses' prompt remediation of all moisture and mold issues.

I also find unnecessary Mr. Woellner's testimony as to which issues are normal and typical for a house of similar age, location, and style.[2] The Waterhouses claim these opinions are relevant to determining what conditions are "material defects in a fifty-year-old home located in a high alpine environment which would be the subject of a seller's property disclosure." Resp. to Mot. to Exclude 9. However, the Waterhouses do not explain why expert testimony is necessary to establish what defects are material and latent, and I find that these issues are within the common knowledge of jurors. *Park Rise Homeowners Ass'n v. Res. Constr. Co.*, 155 P.3d 427, 431 (Colo. App. 2006) (stating that no authority in Colorado requires "that latent defects be identified through expert testimony. . . . [T]he jury could, based on its common knowledge and with a proper instruction, have determined which defects were latent."); *United States v. Kunzman*, 54 F.3d 1522, 1530 (10th Cir.1995) ("Expert testimony is properly admitted if the subject matter is closely related to a

---

[2] As I further explain below, I will permit Mr. Woellner to testify that the presence of a musty odor in a home may be due to the home being closed for long period of time. This testimony directly rebuts Prima Partners' contention that the Waterhouses had knowledge of the mold due to the musty odor in the house.

7

particular profession, business or science and is not within the common knowledge of the average layperson."); *Frase v. Henry*, 444 F.2d 1228, 1231 (10th Cir. 1971) ("When the normal experiences and qualifications of laymen jurors are sufficient for them to draw a proper conclusion from given facts and circumstances, an expert witness is not necessary and is improper.")

However, not all of Mr. Woellner's opinions are inadmissible. First, Mr. Woellner may opine as to certain conditions he observed in the property and whether those conditions indicate limited exposure to moisture. Prima Partners does not contend Mr. Woellner is unqualified to testify as to this issue. Additionally, determining whether there was an extensive history of water intrusion on the property and whether any water issues damaged the property are issues central to this case. Furthermore, the amount of exposure to moisture indicated by conditions such as oxidation levels and wood degradation are not within the common knowledge of jurors.

I also find admissible Mr. Woellner's opinion that the presence of a musty odor in a house may be caused by the home being closed for approximately ten months out of the year. Rebuttal Expert Report of Robert A. Woellner 3, ECF No. 59-2. As I previously stated, the jury will be tasked with determining whether the Waterhouses knew of extensive mold growth in the property. Prima Partners' expert opines that mold growth was apparent based on the odor of the home. Expert Report of Jim Baker, ECF No. 64-15. Mr. Woellner's testimony rebuts this by explaining that mold growth may not have caused the musty odor. This may be helpful to the jury in determining whether the odor gave the Waterhouses' knowledge of the mold problem.

Finally, Mr. Woellner opines that "it is very common for moisture/mold issues that are unseen to be unknown by homeowners." Rebuttal Expert Report of Robert A. Woellner 3. This testimony is proper. Prima Partners does not contest the reliability of this opinion, and Mr. Woellner

bases his opinion on his knowledge and expertise gained from conducting numerous industrial hygiene inspections. Furthermore, whether homeowners typically know of unseen mold issues is not a matter within the common knowledge of jurors. Unlike Mr. Woellner's opinions regarding the Waterhouses' knowledge, his opinion regarding the knowledge of homeowners generally does not invade the role of the jury. *See generally Okland Oil Co.*, 144 F.3d at 1328 ("[E]xpert witnesses in civil cases may testify in the form of an opinion or inference as to ultimate issues to be decided by the trier of fact."). Indeed, the jury need not determine whether homeowners generally have knowledge of unseen defects.

In its reply brief, Prima Partners contends that the statements I find proper are not formal opinions Mr. Woellner disclosed. Reply in Supp. of Mot. to Exclude 3–4, ECF No. 72. In other words, Prima Partners believes that the statements are inadmissible, because they do not appear in bold in the section titled, "Opinions." Prima Partners does not cite any law supporting its proposition that an expert must clearly designate an opinion as such, and I find none. Furthermore, regardless of whether Mr. Woellner clearly designated these statements as "opinions," they qualify as such. *See Opinion*, Black's Law Dictionary (10th ed. 2014) ("A person's thought, belief, or inference, esp. a witness's view about a facts in dispute."); *Opinion Testimony*, Black's Law Dictionary (10th ed. 2014) ("Testimony based on one's belief or idea . . . ."). Therefore, I find it immaterial that Mr. Woellner did not designate the statements as primary or formal opinions in his report.

## **CONCLUSION**

In sum, Mr. Woellner's testimony as to the Waterhouses' knowledge of mold growth, the parties' agreement prior to closing, and whether all moisture and mold issues were promptly

9

addressed usurp the role of the jury. Additionally, these opinions and Mr. Woellner's statements that certain issues are normal and typical in homes are not helpful or necessary for the jury's resolution of this case. However, Mr. Woellner may testify as to his observations of the property, that the issues he observed indicate limited exposure to moisture, that mold is not necessarily the cause of a musty odor, and that homeowners are generally unaware of unseen defects. Accordingly, Prima Partners' Motion to Exclude Disclosed Opinion Testimony of Defendants' Expert Robert A. Woellner [filed January 26, 2018; ECF No. 59] is **granted in part and denied in part**.

Dated and entered at Denver, Colorado this 3rd day of May, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge